UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCS DIRECT, INC., <br>     *Plaintiff*, <br>     *v.* <br> INSASSY, INC., <br>     *Defendant*. | Civil No. 3: 14cv0020(JBA) <br><br> April 7th, 2016 |

**RULING DENYING DEFENDANT'S MOTION TO DISMISS OR CHANGE VENUE**

Defendant Insassy, Inc. ("Insassy") moves [Doc. # 38] to dismiss Plaintiff SCS Direct, Inc.'s ("SCS Direct") claims alleging false designation of origin (Count I) in violation of the Lanham Act, 15 U.S.C. § 1125(a).[1] Alternatively, Insassy moves the Court to transfer venue to the Central District of California pursuant to 28 U.S.C. 1404(a) on the grounds that Connecticut is an "inconvenient forum." The Court heard oral argument on March 8, 2016. For the following reasons, Defendant's motion is denied.

**I. Plaintiff's Factual Allegations**

Plaintiff alleges the following in its Amended Complaint [Doc. # 35]. SCS Direct is a Connecticut corporation with a principal place of business in Milford, Connecticut. (Am. Compl. ¶ 9.) It has sold "Loom Bands," i.e., small rubber bands that are woven into bracelets and other charms, through the online retailer Amazon.com ("Amazon") since July 2013, primarily using the seller name "Loom Bands." (*Id.* ¶ 2.)

---

[1] Plaintiff also alleges unfair competition under the Lanham Act (Count II), violations of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count III), and unfair competition under the common law (Count IV), but Defendant focuses solely on Count I. (Am. Compl. ¶¶ 33–38, 39–41.)

The SCS Loom Bands trade dress involves a particular layout and specific spatial relationship with certain "sizes, shapes, color schemes, text and graphics," including "a child's hand with colorful bracelets; 'Loom Bands' diagonally written in a particular script font in multicolor lettering; a blue band with certain wording crossing the design's middle section with text identifying the contents of the package directly beneath the band; and a colored circle in the design's upper left corner with specific text."[2] (*Id.* ¶ 3.) The trade dress is "non-functional as the SCS Loom Bands Trade Dress is on the packaging of the Loom Bands product and there are multiple alternative designs for packaging of the Loom Bands product that do not impact its function, as evidenced by the numerous sellers of rubber bands [sic] products on Amazon that do not use the SCS Loom Bands Trade Dress on Advertising or packaging." (*Id.* ¶ 25.)

Over time, SCS Direct has received hundreds of positive reviews for its Loom Bands products, all sold using the SCS Loom Bands Trade Dress packaging. Due to the widespread use and display of SCS Direct's Loom Band products, including its trade dress, "(a) the public, including users of Amazon, uses the SCS Loom Bands Trade Dress to identify and refer to SCS Direct's Loom Bands product, and thus the trade dress serves primarily as a designation of origin of products emanating from SCS Direct and (b) the

---

[2] Plaintiff attaches an image of the SCS Loom Bands Trade Dress to its Amended Complaint. (*See* Ex. C to Am. Compl.) "[A] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

trade dress has built up secondary meaning and extensive goodwill, as evidenced, at least in part, by the positive reviews received by SCS Direct for its sale of the Loom Bands products on Amazon." (*Id.* ¶ 17.)

SCS Direct alleges that Insassy, a California corporation with its principal place of business in San Gabriel, California, and a SCS Direct business competitor, "sold a rubber band product on Amazon using the SCS Loom Bands Trade Dress in connection with the sale, advertising and packaging of its own rubber band product." (*Id.* ¶¶ 9, 4.) Insassy was never given "authorization to use the SCS Loom Bands Trade Dress in its advertising, marketing, packaging, or otherwise." (*Id.* ¶ 4.) By using SCS Direct's Trade Dress, Insassy sought to "confuse customers by making customers believe that they were purchasing SCS Direct's Loom Bands Product and to pass off its own products as SCS Direct's Loom Bands." (*Id.* ¶ 6.) Indeed, Insassy, or one its various business aliases, advertised under SCS Direct's Loom Bands product's Amazon listing using the SCS Loom Bands Trade Dress to sell its products, purposefully employing various business aliases in order to continue using SCS Loom Band's trade dress and "to thwart SCS Direct's and Amazon's efforts to prevent Insassy's wrongful misconduct." (*Id.*)

By using SCS Direct Loom Band's Trade Dress, Insassy intentionally confused Plaintiff's customers, making them believe that they were purchasing SCS Direct Loom Bands products when, in fact, they were purchasing Insassy's loom bands. (*Id.* ¶ 6.) SCS Direct seeks injunctive relief, damages, and disgorgement of Defendant's profits.

II.     Discussion[3]

   A. False Designation of Origin, False Representation, and False Description

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks" and "to protect persons engaged in . . . commerce against unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992). Section 43(a) of the Lanham Act, which protects qualifying unregistered trademarks, provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). "The protection against unregistered trademark infringement extends to 'trade dress,' which encompasses the design and appearance of a product along with all the elements that serve to identify the product to consumers." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003).

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

"To state a claim for false designation under § 1125(a) based on trade dress, a plaintiff must establish (1) that its trade dress 'is distinctive as to the source of the good,' (2) 'that there is a likelihood of confusion between [the plaintiff's] good and the defendant's,' and (3) that the trade dress is not functional." *Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 CIV.195 (GEL), 2006 WL 2645196, at *2 (S.D.N.Y. Sept. 13, 2006) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115–16 (2d Cir. 2001)). "In a claim based on product packaging trade dress, the distinctiveness requirement can be met in one of two ways—either by establishing that the dress is inherently distinctive because it clearly identifies the source of the product, or by establishing that the dress has acquired secondary meaning because, in the mind of the general public, the "primary significance" of the dress is to identify the source of the product." *Eliya*, 2006 WL 2645196, at *2 (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000)).

During oral argument, Defendant appropriately did not dispute that SCS Direct had sufficiently pled "nonfunctionality" and "likelihood of confusion," but contended that Plaintiff had failed to adequately allege facts to support a plausible inference of "inherent distinctiveness" or "secondary meaning."

### Inherent distinctiveness

Distinctiveness is judged "on a spectrum of increasing distinctiveness as generic, descriptive, suggestive, or arbitrary/fanciful. Suggestive, arbitrary, or fanciful trade dress is considered inherently distinctive and thus protectable unless it is also functional." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 743 (2d Cir. 1998). "Because manufacturers and retailers have a virtually unlimited choice of packaging and labeling materials available to them, most packaging trade dress is arbitrary, fanciful or

suggestive" and thus inherently distinctive. *Id.* However, limitations exist such as the generic "packaging of lime-flavored soda in green twelve-ounce cans," which is not protectable under the Lanham Act. *Id.* "The focus of the distinctiveness inquiry, and the ultimate test of protectability under the Lanham Act, is whether the plaintiff's trade dress is capable of distinguishing the plaintiff's goods from those of others." *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 CIV. 4187 (RA), 2013 WL 4400532, at *19 (S.D.N.Y. Aug. 15, 2013); *see also Imagineering, Inc. v. Van Klassens, Inc.*, 53 F. 3d 1260, 1263–64 (Fed. Cir. 1995) ("Trade dress is inherently distinctive when, by its 'intrinsic nature,' it identifies the particular source of a product.").

Defendant claims that SCS Direct's Loom Bands trade dress is "generic" rather than "distinctive," because the image of a hand with loom bands on its wrist coupled "with the words 'Loom Bands' in colored font is often used in [loom band product] packaging" and the phrase "loom band" itself is a generic expression employed to describe rubber band bracelets for children. Moreover, it contends that Plaintiff's allegations are inadequate because rather than indicating what makes SCS Direct's Loom Bands Trade Dress distinctive, Plaintiff has simply recited a laundry list of elements comprising protectable trade dress. *See Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 CV 1657 (JG), 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006) ("The issue is not just which features are distinctive, but also how they are distinctive. The phrase 'specific lace band' or 'particular multi-directional part' fail to describe what features make the lace band or multi-directional part unique.").

The Court does not agree. As Plaintiff argued during oral argument, its allegations of "a child's hand with colorful bracelets; 'Loom Bands' diagonally written in a particular

script font in multicolor lettering; a blue band with certain wording crossing the design's middle section with text identifying the contents of the package directly beneath the band; and a colored circle in the design's upper left corner with specific text" provide a composite of the packaging that illustrates its distinctiveness. Moreover, given the virtually unlimited choice of packaging available, trade dress is *presumptively* distinctive, i.e., arbitrary, fanciful, or suggestive, which Plaintiff's description of the packaging in terms of font, color, and image corroborates, and which the attached image of the trade dress reflects. Indeed, as the image of Plaintiff's product packaging makes readily clear, Plaintiff's Loom Bands Trade Dress is *not* analogous to a "green twelve ounce can" of lime-flavored soda.

Because the Court concludes that Plaintiff has pled sufficient facts to support a plausible inference that its Loom Bands Trade Dress is "inherently distinctive," it need not reach the question of secondary meaning. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001) ("A product's trade dress is protected under the Lanham Act if . . . it is either inherently distinctive *or* has acquired secondary meaning in the marketplace." (emphasis added)). Accordingly, Insassy's motion to dismiss is denied.

### B.  Venue Transfer

Next, Insassy urges the Court to transfer this case to the Central District of California on three grounds: (1) the location of operative facts is in California; (2) all of the relevant evidence exists in California; and (3) Defendant and its witnesses are located entirely in California and thus it would be costly and inconvenient to produce witnesses at the time of trial. Plaintiff contends that Defendant's argument boils down to one of

convenience only, and that Defendant has failed to show how the balance of considerations tip in its favor.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Excelsior Designs v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citing *Ford Motor Co. v. Ryan*, 182 F. 2d 329, 330 (2d Cir. 1950)). "In determining whether transfer of venue is appropriate, district courts must engage in [the following] two-part inquiry []: (1) whether the action might have been brought in the proposed transferee forum and, if so, (2) whether the transfer promotes convenience and justice." *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 307 (D. Conn. 2009) (internal quotation marks omitted). As to this second inquiry, courts consider the following factors: (1) the location of the events giving rise to the suit; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of the process for unwilling witnesses; (6) plaintiff's choice of forum; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the interest of justice, including the relative means of the parties. *See Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 513 (D. Conn. 2011).

Notwithstanding Insassy's arguments to the contrary, the operative facts in this case do not arise in California, as under the Lanham Act, claims arise not where Defendant packaged its rubber band products but rather where a customer bought the deceptively packaged or labeled product. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) ("In cases of trade-mark infringement and unfair competition, the

8

wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's."). As reflected in the interrogatory attached to Plaintiff's Opposition (*see* Ex. D to Pl.'s Opp'n [Doc. # 41-1] at 8–13), Insassy sold and shipped products with the allegedly infringing trade dress to numerous consumers in Connecticut and thus "the events that gave rise to the suit occurred in Connecticut." *Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1064 (D. Conn. 2004); *see also Joint Stock Soc. Trade House of Descendants of Peter Smirnoff v. Heublein, Inc.*, 936 F. Supp. 177, 187 (D. Del. 1996) ("[I]t is legitimate and rational for a plaintiff to choose a forum in which consumers in the forum allegedly are being injured by the defendant's activities.").

Although it is true that Defendant may be inconvenienced with having to defend this case in Connecticut, so, too, would Plaintiff be inconvenienced in California, and the Court must "give substantial consideration to the plaintiff's choice of forum, especially in a case where [as here] the plaintiff resides in the district where the case was filed." *Broad. Mktg.* 345 F. Supp. at 1064. Furthermore, given that this case involves a CUTPA claim, "Connecticut is also better equipped to deal with the law governing" this statute than is California. *Id.* at 1064. Because Defendant has failed to proffer sufficient evidence showing the balance of considerations in its favor, its motion to change venue is denied.

### III. Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 38] to Dismiss and Change Venue is DENIED.

                                          IT IS SO ORDERED.

                                          /s/
                                      Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of April 2016.